## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHAQUILLE PRINCE,

                Plaintiff,

        v.

VILLAGE OF ROMEOVILLE POLICE
OFFICER FRANCISCO GARCIA *et al.*,

                Defendants.

No. 22-cv-05703

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Shaquille Prince filed an amended complaint against four named current or former Village of Romeoville Police Officers, four unnamed Village of Romeoville Police Officers, and the Village of Romeoville (Village), after an arrest and resulting prosecution that Plaintiff asserts was unconstitutional. (Dkt. 20.) Plaintiff raises two theories of relief: a claim under 42 U.S.C. § 1983 against the Officers for violating Plaintiff's First, Fourth, and Fourteenth Amendment rights (Counts I–VII, X–XI, XVI, XVIII); and a *Monell* claim against the Village (Count XII). Plaintiff also brings four separate state-law claims for malicious prosecution (Count IX), spoliation (Count XIII), intentional infliction of emotional distress (Counts XIV–XV), and battery (Count XVII). Before the Court is Defendants' partial motion to dismiss. (Dkt. 27.) For the reasons that follow, the motion is granted in part and denied in part.

## I.    BACKGROUND

As alleged in the amended complaint, Plaintiff Shaquille Prince (Plaintiff) returned to his residence, which was owned by his girlfriend, when the alarm system was activated. (Dkt. 20 at 2.) Plaintiff's girlfriend was not present at the time Plaintiff returned to the residence. (*Id.*) Plaintiff texted his girlfriend to turn off the alarm, and the alarm was deactivated a few minutes later. (*Id.* at 3.) Soon after, Defendant Officer Francisco Garcia (Officer Garcia) entered the residence through the rear door and activated the home alarm system. (*Id.*) Alerted by the alarm, Plaintiff went to the rear door where he encountered Officer Garcia and Defendant Officer Jason Jandura (Officer Jandura) inside the residence. (*Id.*) Officer Garcia asked Plaintiff for identification, to which Plaintiff said he could go and get. (*Id.*) Officer Garcia then instructed Plaintiff to "stay right there" (while grabbing his service pistol). (*Id.*)

Plaintiff verbally provided his and his girlfriend's information. (*Id.*) Officers Garcia and Jandura responded that they did not believe Plaintiff lived there. (*Id.* at 3–4.) Defendant Unknown Officers 1–4 then entered the residence without permission. (*Id.* at 4.)

Plaintiff began to record the encounter on his cell phone. (*Id.*) Plaintiff again provided his information and his girlfriend's information to the Officers. (*Id.*) Defendant Sergeant Matthew Berowicz (Sergeant Berowicz) then entered the residence without permission. (*Id.*) Unprovoked by Plaintiff, Sergeant Berowicz began choking Plaintiff, and Officers Garcia and Jandura, together with Unknown Officers 1–4, tackled Plaintiff while yelling at him to "stop resisting." (*Id.*) Plaintiff

dropped his phone when he was tackled. (*Id.*) Officer Garcia took Plaintiff's phone and deleted the video Plaintiff had recorded of the incident. (*Id.*)

Defendant Officers handcuffed Plaintiff while they conducted a search of the residence. (*Id.* at 5.) Plaintiff was placed into a patrol car. (*Id.*) The Officers continued to search the residence as Plaintiff was in the patrol car. (*Id.*) During the search, the individual listed as the emergency contact for the home security arrived at the residence, where she identified herself as the emergency contact and confirmed that Plaintiff lived at the residence owned by his girlfriend. (*Id.*)

Plaintiff was booked and charged with destroying evidence and obstruction of justice; he pleaded not guilty to the charges. (*Id.* at 6.) Plaintiff was convicted of obstruction of justice and sentenced to 360 days of imprisonment. (*Id.* at 6.) Plaintiff appealed, and on September 24, 2021, the Illinois Appellate Court reversed the conviction and remanded the case for a retrial. (*Id.* at 7.) On further appeal, the Supreme Court of Illinois affirmed the Illinois Appellate Court in part but reversed the portion of the ruling permitting a retrial. (*Id.*)

Plaintiff filed this pro se civil rights complaint on October 18, 2022. (Dkt. 1.) The Court twice ordered Plaintiff to show cause why this case was not time barred. (Dkts. 6, 10.) Plaintiff responded that the *Heck* doctrine tolled the claims. (Dkt. 13.) In the understanding that *Heck* might have delayed the accrual of some claims, the Court recruited counsel and allowed Plaintiff leave to file an amended complaint without prejudice to Defendants' raising any statute of limitations defense. (*See generally* Dkt. 17.) The Court also held that Plaintiff could not pursue claims arising

3

from a separate incident that he is pursuing in a different case before Judge Gettleman.[1] (*Id.* at 5.)

Plaintiff, acting through appointed counsel, filed an amended complaint, naming Officers Garcia, Jandura, Sergeant Berowicz, Sergeant Michael Michienzi (Sergeant Michienzi), and Unknown Officers 1–4 (collectively, "Defendants") as Defendants.[2] (Dkts. 20, 42.) Defendants now move to partially dismiss the amended complaint. (Dkt. 27.) Defendants contend that the majority of Plaintiff's claims are time-barred. (*Id.* at 5–12.) Plaintiff counters either that delayed accrual makes his amended complaint timely, or he should have the opportunity to replead some claims to provide more facts. (Dkt. 31 at 2–14.)

## II.    STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that

---

[1] That case has since been reassigned to Judge Harjani. (*See Prince v. Michienzi et al.*, No. 19-cv-07265.)

[2] Plaintiff made a typo in the Amended Complaint, bringing two separate causes of action under Count X, a false imprisonment claim and a First Amendment retaliation claim. (*Id.* at 18–20.) For the sake of clarity, the Court (Dkt. 41) directed Plaintiff to file a corrected amended complaint. Plaintiff filed the corrected amended complaint at Dkt. 42.

conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the Complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678−79.

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Plaintiffs "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). In general, "[a] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (cleaned up). If there is any set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If, however, the "allegations of the complaint itself set forth everything necessary" to determine the timeliness of Plaintiff's claims, the statute of limitations defense may be raised and decided on a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

5

## III.    DISCUSSION

Defendants contend that the majority of Plaintiff's claims are time-barred and must be dismissed. (*See generally* Dkt. 27.) More specifically, of the nineteen causes of action, Defendants contend that only two are timely. (Dkt. 28 at 1.) It is well-established that "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). But "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness," a court may dismiss the complaint. *Id.* at 674–75.

### A.    Timeliness of Plaintiff's Section 1983 Claims (Counts I–VIII, X–XII, XVII, XIX)

Section 1983 claims "are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Illinois, where the events underlying this lawsuit occurred, the "statute of limitations for personal-injury actions is two years from when the cause of action accrued." *Id.* (citing 735 ILCS 5/13-202). Although state law determines the applicable statute of limitations, the "accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Courts must use a two-step process to determine the accrual date: "(1) we

identify the injury and (2) we determine when the plaintiff could have sued for that injury." *Id.*

### 1. Excessive Force Claims

In Counts I through VII, Plaintiff alleges that the Defendant Officers used excessive force against him. (Dkt. 20 at 7–15; Dkt. 42 at 7–15.) Defendants argue this claim is untimely because the excessive force used against Plaintiff occurred more than two years before Plaintiff filed this action. (Dkt. 28 at 6–7.)

A claim for excessive force accrues, and the statute of limitations begins to run, at the time the defendant police officer allegedly used the excessive force. *See Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998); *see also Valdez v. Village of Brookfield, Illinois*, 2020 WL 2935125, at *3 (N.D. Ill. June 3, 2020) ("A claim of excessive force under § 1983 'accrues immediately' at the time the alleged excessive force occurs." (quoting *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010))).

Under this rule, the statute of limitations for Plaintiff's excessive force claims accrued on the date the force was used: January 25, 2018. (Dkt. 20 at 2; Dkt. 42 at 2.) Plaintiff does not dispute this contention. (*See generally* Dkt. 31.) Because Plaintiff filed his complaint more than two years after the arrest in which excessive force was used, his excessive force claim is untimely. *See Evans*, 603 F.3d at 363. Because the flaw in these counts cannot be cured by repleading, the dismissal is with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

### 2. False Arrest

In Count VIII, Plaintiff alleges that Defendants illegally seized Plaintiff and detained him in jail without probable cause, violating Plaintiff's Fourth Amendment

rights. (Dkt. 20 at 15–16; Dkt. 42 at 15–16.) Defendants argue this claim is untimely because Plaintiff was arrested more than two years before Plaintiff filed the claim. (Dkt. 28 at 7–8.)

A claim for unlawful arrest accrues when the arrestee's detention becomes based on legal process—"when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389 (limitations period for arrestee's § 1983 unlawful arrest claim against city police officers began to run at time he appeared before examining magistrate and was bound over for trial, not later upon his release from custody after state dropped charges against him); *see also Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (a false-arrest claim is an exception to the rule that a § 1983 claim accrues when a plaintiff knows or has reason to know of the injury forming the basis of his action; rather, the statute of limitations begins to run when the arrestee is detained pursuant to legal process).

Plaintiff's false arrest claim accrued on January 26, 2018, because that is the date Plaintiff was bound over for charges. (Dkt. 20 at 6; Dkt. 42 at 6.) As the docket from Plaintiff's state criminal proceedings (2018CF000194) shows, on January 26, 2018, a judge found probable cause for Plaintiff's detention, and Plaintiff was detained with bond being imposed. *See Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020) ("A court may take judicial notice of public records such as . . . state court documents[.]").

Plaintiff does not dispute this general contention. Rather, Plaintiff argues that the delayed accrual rule adopted by the Supreme Court in *Heck v. Humphrey*,[3] delayed the accrual date for this claim. (Dkt. 31 at 5–6.)

In *Heck*, the Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87. Thus, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487. To determine whether a § 1983 claim is barred by *Heck*, the Court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* If a judgment in plaintiff's favor would not demonstrate the invalidity of the plaintiff's criminal conviction, then the action should proceed. *Id.*

Importantly, the corollary to *Heck's* bar is that such claims do not accrue unless and until the conviction has been invalidated, and, accordingly, the statute of limitations does not begin to run until that time. *See id.* at 489–90 ("Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen."); *see also Wallace*, 549 U.S.

---

[3] 512 U.S. 477 (1994).

at 393 (*Heck* rule "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn").

The Seventh Circuit has squarely rejected the delayed accrual rule for false arrest claims because "an arrest without probable cause . . . does not imply the invalidity of a conviction because courts do not 'suppress the body' of the accused." *Evans*, 603 F.3d at 364 (citation omitted). Plaintiff filed his complaint more than two years after he was bound over by a judge, meaning that *Heck's* delayed accrual does not apply; his false arrest claim is therefore untimely. *See Wallace*, 549 U.S. at 387. Because the flaw in this claim cannot be cured by repleading, this dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

### 3.     False Imprisonment

In Count X, Plaintiff alleges that Defendants illegally detained Plaintiff in jail without probable cause, violating Plaintiff's Fourth Amendment rights. (Dkt. 20 at 18–19; Dkt. 42 at 18–19.) Defendants argue this claim is untimely because Plaintiff's detention ended more than two years before Plaintiff filed the claim. (Dkt. 28 at 7–8.)

Plaintiff's Fourth Amendment claim for unlawful pretrial detention is untimely. *See Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Plaintiff's claim accrued when his pretrial detention ended, more than two years before his complaint was filed in 2022. *See Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 669–70 (7th Cir.

2018) (Fourth Amendment claim of unlawful pretrial detention accrues when detention ends).

That said, Plaintiff also alleges a claim for unlawful posttrial detention. (*See* Dkt. 42 at 18–19.) Plaintiff attacks the procedure and evidence used to convict him. (*Id.* at 18–19.) According to Plaintiff, he was convicted and imprisoned because Defendant Officers' "jointly and in [a] conspiracy, caused the Plaintiff to be imprisoned on charges of obstruction of justice." (*Id.* at 18.) This type of claim does not accrue harmoniously with the Fourth Amendment pretrial detention claim because under *Heck v. Humphrey*, Plaintiff could not pursue a Section 1983 claim about his prosecution while his conviction remained valid. This claim properly sounds in due process because, after a criminal conviction, "the Fourth Amendment drops out," and a challenge to the conviction or ensuing incarceration arises under the Fourteenth Amendment. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369 n.8 (2017); *see also Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019). Plaintiff failed to plead a Fourteenth Amendment violation in the amended complaint, however.

As a result, because Plaintiff filed his complaint more than two years after his release from custody, his unlawful pretrial detention claim is untimely and must be dismissed with prejudice. *See Manuel*, 903 F.3d at 669. Because Plaintiff did not allege a Fourteenth Amendment violation, his unlawful posttrial detention claim fails to state a claim for which relief can be granted; but because repleading could cure the deficiency, this dismissal is without prejudice.

11

### 4.    Malicious Prosecution

In Count IX, Plaintiff alleges that Defendants maliciously prosecuted Plaintiff, but Plaintiff does not explain whether this claim is brought under state or federal law. (Dkt. 20 at 16–18; Dkt. 42 at 16–18.) Defendants contend that if it is brought under state law, the claim is untimely; but Defendants concede that if it is brought under federal law, the claim is timely. (Dkt. 28 at 7–9, 12–13.) Construing the claim as one grounded in the Fourth Amendment for present purposes, the Court finds that Plaintiff states a timely claim for malicious prosecution. Should it later appear that Plaintiff's claim in Count IX rests solely on state law, the issue of the claim's timeliness may again be raised.

Until recently, the Seventh Circuit consistently held that claims for malicious prosecution exist only under state law, not the federal constitution. *See, e.g., Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019); *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019); *see also Savory v. Cannon*, 532 F. Supp. 3d 628, 637 (N.D. Ill. 2021). But the Supreme Court, in a recent decision concerning *when* Fourth Amendment claims for malicious prosecution accrue, explicitly recognized their existence. *See Thompson v. Clark*, 596 U.S. 36, 44 (2022) ("[A] Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him"); *see also Smith v. City of Chicago*, 2022 WL 2752603, at *1 (7th Cir. July 14, 2022) ("After *Thompson*, a Fourth Amendment claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction."); *In re Watts*, 2022 WL 9468206, at

*15 (N.D. Ill. Oct. 14, 2022) ("*Thompson* overruled Seventh Circuit precedent that there was no cognizable claim for malicious prosecution under the Fourth Amendment.").

In the light of *Thompson*, the Seventh Circuit in *Smith* found that a Fourth Amendment malicious prosecution claim accrues when the underlying prosecution is terminated. 2022 WL 2752603, at *1. Plaintiff's claim for malicious prosecution grounded in the Fourth Amendment is a federal claim not barred by the applicable statute of limitations, as fewer than two years passed between the end of Plaintiff's prosecution and the filing of the complaint. Accordingly, the motion to dismiss Count IX is denied without prejudice.

### 5.      First Amendment Retaliation Claims

In Counts XI and XIX, Plaintiff contends his First Amendment rights were violated by Defendants when Plaintiff began recording the encounter with Defendants. (Dkt. 20 at 19–20, 27–28; Dkt. 42 at 19–20, 27–28.) Defendants argue these claims are untimely. (Dkt. 28 at 9.) Plaintiff again does not dispute this general contention. Rather, Plaintiff argues that *Heck's* delayed accrual rule applies to First Amendment retaliation claims. (Dkt. 31 at 8–9.)

As the Seventh Circuit has held, "the statute of limitations clock [generally] begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Plaintiff contends that the Court should extend *Heck's* delayed accrual rule to First Amendment claims because courts have done so for claims involving fabricated

evidence. (Dkt. 31 at 8–9.) Yet the Seventh Circuit has rejected this invitation, holding a First Amendment retaliation claim does not require a favorable termination of the underlying action. *See Towne v. Donnelly*, 44 F.4th 666, 673–74 (7th Cir. 2022). As a result, the Court finds Plaintiff's First Amendment Retaliation claims are untimely and must be dismissed with prejudice. *See Haywood*, 887 F.3d at 335.

### 6.    Unlawful search and seizure claims

In Count XII, Plaintiff alleges that Defendants unlawfully searched the residence and his phone without probable cause and also unlawfully seized and disclosed the contents of his phone to third parties, all in violation of Plaintiff's Fourth Amendment rights. (Dkt. 20 at 20–21; Dkt. 42 at 20–21.) Defendants argue this claim is untimely because the search and seizure occurred more than two years before Plaintiff filed suit. (Dkt. 28 at 9–10.)

A Fourth Amendment claim for an illegal search and seizure accrues immediately. *See Evans*, 603 F.3d at 363 ("[A] claim asserting that a search or seizure violated the fourth amendment . . . accrues immediately."); *Gonzalez*, 133 F.3d at 553 ("[A] claim asserting a violation of the fourth amendment necessarily 'accrues' at the time of the unlawful search or seizure, as we have held several times."); *Turentine v. City of Chicago*, 2014 WL 866509, at *3 (N.D. Ill. Mar. 4, 2014) (a due process claim arising from alleged illegal seizure accrues at the "initial unlawful seizure of property").

Under these authorities, the statute of limitations for Plaintiff's unlawful search or seizure claim accrued on the date the search and seizure occurred: January

25, 2018. (Dkt. 20 at 2–6.) Plaintiff does not dispute this contention. (*See generally* Dkt. 31.) Because Plaintiff filed his complaint more than two years after the search and seizure occurred, his unlawful search and seizure claim is untimely. *See Evans*, 603 F.3d at 363. This flaw in the claim cannot be cured by repleading; accordingly, this dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

### B.    State law claims

Defendants contend that all of Plaintiff's state law claims are untimely. (Dkt. 28 at 10–13.) Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." *See* 745 ILCS 10/8-101(a). Moreover, the "limitations period [generally] begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003).

### 1.    Spoliation

In Count XIV, Plaintiff alleges that Defendants deleted video and photograph evidence of the events in question so that these videos could not be produced in his criminal trial and thus impair his defense. (Dkt. 20 at 22–23; Dkt. 42 at 22–23.) A cause of action for spoliation accrues when the evidence at issue is destroyed, but this accrual date is modified by the "discovery rule," under which the period of limitations does not start until the injured party knows or should know of his injury. *See Schusse v. Pace Suburban Bus Div.*, 779 N.E.2d 259, 267–68 (Ill. App. Ct. 2002). Illinois courts

have not adopted an equivalent to *Heck's* delayed accrual rule with respect to spoliation claims, and a spoliation claim is subject to the Illinois Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8-101(a). Plaintiff knew about the destruction of evidence, at the latest, in April 2019; Plaintiff's state law spoliation claim is therefore untimely. Because the flaw in this claim cannot be cured by repleading, this dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

### 2. Battery

In Count XVIII, Plaintiff alleges that Officer Garcia and Sergeant Berowicz committed battery against Plaintiff during the encounter at Plaintiff's residence. (Dkt. 20 at 26; Dkt. 42 at 26–27.) A cause of action for battery accrues on the day the injury occurred. *See Atwater v. Bd. of Educ. of City of Chicago*, 2012 WL 13059088, at *3 (N.D. Ill. 2012) ("Under Illinois law, a cause of action for assault and battery accrues at the moment of injury."). Illinois courts have not adopted an equivalent to *Heck's* delayed accrual rule with respect to battery claims. Because Plaintiff filed his complaint more than a year after the battery occurred, his state law battery claim is untimely. *See Gomez v. Riccio*, 2004 WL 1921053, at *3 (N.D. Ill. July 9, 2004). Because the flaw in this claim cannot be cured by repleading, this dismissal is with prejudice. *See Haywood*, 887 F.3d at 335.

### 3. Intentional Infliction of Emotional Distress claims

In Counts XV and XVI, Plaintiff alleges that Officer Garcia and Sergeant Berowicz committed extreme and outrageous conduct by their actions during the encounter, thus causing Plaintiff severe emotional distress. (Dkt. 20 at 23–25; Dkt.

42 at 24–25.) A cause of action for "intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013).

That said, there is a split in authority among the courts of this District as to whether Illinois recognizes the delayed accrual rule for IIED claims. A number of cases hold there is no delayed accrual rule under Illinois law. *See, e.g.*, *Batchelor v. City of Chicago*, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020). In contrast, a number of other judges have held that the rule applies. *See, e.g.*, *Treadwell v. Salgado*, 2021 WL 3129290, at *4 (N.D. Ill. July 23, 2021) (collecting cases). Those decisions explain that when an IIED claim is based on the same misconduct that procured the plaintiff's conviction, the statute of limitations does not begin to run until the wrongful conviction has been overturned. *See, e.g.*, *Hill v. City of Chicago*, 2020 WL 509031, at *5 (N.D. Ill. Jan. 31, 2020). Plaintiff fails to make such allegations here. (*See generally* Dkt. 20.)

Because Plaintiff filed his complaint more than a year after the alleged extreme and outrageous conduct occurred, his state law IIED claims are untimely. *See Friends-Smiley v. City of Chicago*, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016). Yet because repleading could potentially cure the defect, this dismissal is without prejudice.

### C. *Monell* Claim (Count XIII)

When the "execution of a government's policy or custom . . . inflicts the [constitutional] injury," the local government can be held responsible under Section

1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff claims that his excessive force and spoliation claims were due to *de facto* policies and practices of Romeoville police officers "motivated by evil motive or intent." (Dkt. 20 at 22; Dkt. 42 at 21–22.) According to Plaintiff, the Village of Romeoville Police Department's permissive use of "choke holds, even in situations not warranting them," as well as their "destruction or loss of chain of custody of unfavorable evidence against Romeoville Police Officers, including unfavorable video recordings and photographs" was "so persistent and widespread with the actions of the Romeoville Police Department that it practically had the force of law in the Village." (Dkt. 20 at 21; Dkt. 42 at 21–22.)

As Defendants correctly contend, Plaintiff's *Monell* claim is similarly time-barred with regard to the excessive force and spoliation claims because the statute of limitations for the underlying Section 1983 claim also applies to the *Monell* claim. (Dkt. 28 at 14); *see also Jones v. Burge*, 2012 WL 2192272, at *8 (N.D. Ill. June 13, 2012) ("Because *Monell* policy claims fall under the scope of Section 1983, they are also subject to the two-year statute of limitations in Illinois."). As with an individual liability claim, a *Monell* claim accrues when the plaintiff knows or should know that his constitutional rights were violated. *Armour v. Country Club Hills*, 2014 WL 63850, at *5 (N.D. Ill. Jan. 8, 2014). Plaintiff's *Monell* claim thus accrued contemporaneously with his underlying Fourth Amendment excessive force and Illinois state law spoliation claims. And because both claims are untimely, the *Monell* claim is also untimely. *See, e.g., Scott v. Chicago Police Dep't*, 2015 WL 394360, at *4

(N.D. Ill. Jan. 29, 2015) ("*Monell* claim which [are] tethered to [untimely] constitutional violations [are] also time-barred."); *Armour*, 2014 WL 63850 at *5 (*Monell* claims were time barred to the extent that they were based on time barred constitutional violations).

Moreover, *Monell* liability cannot attach to the timely Fourth Amendment malicious prosecution or Fourteenth Amendment due process violation claims because Plaintiff fails adequately to plead that the Village was put on notice. To state a *Monell* claim against the Village, Plaintiff must plausibly allege that "an official policy, however expressed . . . caused the constitutional deprivation." *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). An "actual constitutional claim" must be established by the face of the complaint. *See Contreras v. City of Chicago*, 119 F.3d 1286, 1294 (7th Cir. 1997) (disentangling "what constitutes a constitutional violation and what makes a municipality liable for constitutional violations").

A plaintiff may also take an "alternative path to *Monell* liability" by alleging that the need for more or different training is "so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). This is otherwise known as a failure-to-train theory of liability. *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Although the Supreme Court in *Harris* "did not absolutely foreclose the possibility that a plaintiff might

19

succeed in proving a failure-to-train claim without showing a pattern of constitutional violations," a plaintiff relying on a failure-to-train theory must nevertheless eventually "provide enough evidence of custom and practice to permit an inference that the [Village] has chosen an impermissible way of operating." *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005).

It is correct that "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. Coordination Unit*, 507 U.S. 163, 164 (1993)). Indeed, as the Seventh Circuit has explained, a "conclusory" *Monell* claim will survive a motion to dismiss when the claim is "sufficient to put the [Village] on notice of [Plaintiff's] claim against it" and does not "[leave] out facts necessary to give the defendants a complete understanding of the claims made against them." *Id.* at 325. To withstand a motion to dismiss a *Monell* claim, Plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [Village] maintained a policy, custom, or practice" that led to Plaintiff's constitutional injuries. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (cleaned up).

These standards, of course, govern this Court's review of Defendant's motion to dismiss. But even with the requisite pleading standards, the Court holds that Plaintiff has not plausibly pleaded a *Monell* claim. For the following reasons, both of Plaintiff's *Monell* theories of liability fail.

### 1. Plaintiff fails to plausibly allege a *Monell* claim based on a widespread practice theory.

To determine whether a plaintiff has sufficiently pleaded a widespread practice theory of liability, the Court must look to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). Although a plaintiff is not required to identify "every other or even one other individual" who suffered the same constitutional violation as a result of the complained-of practice, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), the claim "requires more evidence than a single incident to [eventually] establish liability," *Calhoun*, 408 F.3d at 380. An alleged practice must be so widespread as to "permeate[ ] a critical mass of [the] institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Misbehavior by a single official is relevant only where "it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Even viewed in the light most favorable to Plaintiff, the Amended Complaint's allegations fail to establish a widespread practice or policy that caused Plaintiff's alleged deprivations. Plaintiff neither attempts outright to define any parameters of a widespread Village practice nor provides any allegations of similar harassment faced by others to support an inference that such a practice exists (or existed). (*See* Dkt. 20 at 21–22.)

Other judges in this District have rejected widespread practice claims under *Monell* even when the plaintiff provides far greater evidence than Plaintiff does here.

*See, e.g., Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 793 (N.D. Ill. 2013) ("[F]ive [similar cases] over a period of more than twenty years are insufficient to create municipal liability for a 'widespread practice.' "); *Carmona v. City of Chicago*, 2018 WL 306664, at *3 (N.D. Ill. Jan. 5, 2018) (submission of U.S. Department of Justice report on use-of-force cases cannot establish widespread practice of the precise handcuffing alleged); *Henderson v. McCarthy*, 2016 WL 6135706, at *4 (N.D. Ill. Oct. 20, 2016) (allegations that police officers were previously reprimanded for similar conduct do not establish a widespread practice).

Indeed, the only allegations in the Amended Complaint are Plaintiff's personal experiences, but those alleged incidents fail to show plausibly a widespread practice. *See Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 842 (N.D. Ill. 2020) (finding no widespread practice when only the plaintiffs' experiences were alleged); *see also Watkins v. City of Chicago*, 2022 WL 1045703, at *6 (N.D. Ill. Apr. 7, 2022) (same); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *4 (N.D. Ill. 2016) (same); *Zubek v. City of Chicago*, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006) (same); *Watson v. Vill. of Glenview*, 2000 WL 283977, at *3 (N.D. Ill. Mar. 10, 2000) (same). Even under the accommodating notice pleading standard, Plaintiff's strained allegations of a widespread practice fail "to put the [Village] on notice of [Plaintiff's] claim against it." *McCormick*, 230 F.3d at 325.

### 2. Plaintiff fails to plausibly allege a *Monell* claim based on a failure-to-train theory.

For Plaintiff to allege plausibly that the Village's failure to train its police officers adequately amounted to a policy under *Monell*, Plaintiff must allege that "the

[Village's] inadequacies resulted from conscious choice—that is . . . [that] the policymakers deliberately chose a training program which would prove inadequate." *Calhoun*, 408 F.3d at 380 (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)). Put differently, to survive a motion to dismiss, Plaintiff must plausibly state that the Village's "failure to act can reflect deliberate indifference." *J.K.J.*, 960 F.3d at 380.

To support a failure-to-train theory, Plaintiff alleges little. (*See generally* Dkt. 20; Dkt. 42.) Plaintiff does not define or otherwise specify what "adequate training" the Village failed to provide, nor does he plead facts linking that failure to his injuries. Such a nexus is needed "to permit an inference that the [Village] has chosen an impermissible way of operating." *Calhoun*, 408 F.3d at 381.

Absent a "specific pattern or series of incidents required to support the general allegation of a custom or policy," *Nelson*, 992 F.3d at 607 (cleaned up), Plaintiff's *Monell* claim may only survive if the misconduct is "so obvious that the [Village's] failure to act can reflect deliberate indifference," *J.K.J.*, 960 F.3d at 380. But the Amended Complaint's general allegations are insufficient to permit the Court to reach that inference. Taken as true, Plaintiff's specific constitutional deprivations do not rise beyond "a random event." *Calhoun*, 408 F.3d at 380. Plaintiff's claim is therefore not plausible under a *Monell* failure-to-train theory of liability.

Even taking Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, no viable *Monell* claim can be discerned from the amended complaint. Accordingly, Plaintiff fails to state a claim against the Village and Count

XIII must be dismissed. But because it is possible that this deficiency could be cured by repleading, Plaintiff is given leave to submit an emended complaint addressing the *Monell* claim.

## IV.    CONCLUSION

Defendants' partial motion to dismiss (Dkt. 27) is granted in part and denied in part. Plaintiff states a timely Fourth Amendment malicious prosecution claim. Plaintiff's unlawful detention claim, state law IIED claims, and *Monell* liability claim are dismissed without prejudice. All other claims are dismissed with prejudice.

SO ORDERED in No. 22-cv-05703.

Date: September 30, 2024

_____
JOHN F. KNESS
United States District Judge