IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAQUILLE PRINCE, | |
| Plaintiff, | No. 22-cv-05703 |
| v. | Judge John F. Kness |
| VILLAGE OF ROMEOVILLE POLICE OFFICER FRANCISCO GARCIA *et al.*, | |
| Defendants. | |

**ORDER**

For the reasons provided in the accompanying Statement, Defendants' partial Rule 12(b)(6) motion to dismiss (Dkt. 57) is granted in part and denied in part. Count XIII (*Monell*) and the claims against Defendant Sergeant Michienzi are dismissed with prejudice. The motion to dismiss Counts XV and XVI (IIED) is denied. Consistent with the accompanying Statement, Plaintiff must file a Third Amended complaint on or before September 19, 2025. The status hearing set for September 4, 2025 is reset to October 29, 2025 at 9:30 a.m.

**STATEMENT**

**I. Background**

The background and procedural history of this case is detailed more extensively in the Memorandum Opinion and Order granting in part and denying in part Defendants' previous motion to dismiss. (Dkt. 50.) As detailed at Dkt. 55 (which amended/corrected Dkt. 50), the Court (a) dismissed with prejudice Counts I–VIII, XI–XII, XIV, XVIII, and XIX; (b) dismissed without prejudice and with leave to replead Counts X, XIII, and XV–XVI; (c) denied without prejudice Defendants' Motion to Dismiss Count IX; and (d) noted that Count XVII stood because Defendants had not moved to dismiss that Count. (Dkt. 55.)

On October 21, 2024, Plaintiff filed the operative Second Amended complaint (Dkt. 54), which is the subject of the present partial motion to dismiss (Dkt. 57). Defendants do not move to dismiss Count IX (fourth amendment malicious

prosecution), Count X (fourth amendment unlawful post-trial detention), or Count XVII (fourteenth amendment right to fair trial).[1] (*Id.* ¶ 10.) Defendants, however, move to dismiss Counts XIII (*Monell*) and XV–XVI (IIED) of the Second Amended complaint. (*Id.* ¶¶ 6–7.) Defendants argue that the *Monell* claim remains deficient and that the IIED claims are time barred. (*Id.*)

## II. Legal Standard

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Such "details and proof" come later, and all a plaintiff must do is "state a grievance." *Id.* at 1338. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. Discussion

### A. Count XIII (*Monell*) Is Dismissed with Prejudice

Count XIII alleges that the Village of Romeoville has *Monell* liability for the false arrest and aggressive manhandling of Plaintiff by Defendants while he was lawfully in his girlfriend's home. (*See* Dkt. 54 ¶¶ 124–52.) Plaintiff articulates three theories of *Monell* liability: widespread practice, failure to train, and failure to supervise. (*Id.*) The Court previously dismissed Count XIII without prejudice and with leave to replead for failure to plausibly allege a *Monell* claim based on widespread practice and failure to train theories. (Dkt. 50 at 17–24.) Although the previous opinion is incorporated here, it bears emphasis that Count XIII was dismissed under the standard articulated by the Court of Appeals in *McCauley v. City*

---

[1] In their motion to dismiss, Defendants identify this count as "XVIII (14th Amendment right to a fair trial)." (*Id.* ¶ 10.) The Court construes Defendants as referring to Count XVII, not Count XVIII, as the complaints identifies Count XVII to be the fourteenth amendment fair trial count. (Dkt. 54 at 21.) Count XVIII, by contrast, refers to the previously-dismissed civil battery claim. (*Id.* at 22.)

2

*of Chicago*, 671 F.3d 611 (7th Cir. 2011). *McCauley* held that, to withstand a motion to dismiss a *Monell* claim, Plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [Village] maintained a policy, custom, or practice" that led to Plaintiff's constitutional injuries. *Id.* at 616 (cleaned up). In other words, although it is a truism that "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability," *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000), the pleadings must establish a widespread practice or policy that caused Plaintiff's alleged deprivations, and a plaintiff's personal experiences alone are not sufficient. (Dkt. 50 at 21–22) (citing cases).) To state a claim under a failure to train or supervise theory, a plaintiff similarly must plead facts "demonstrating a failure to train or supervise, how a failure to train or supervise created the circumstances in which the officers were able to violate his civil rights, or that anyone else suffered from a similar lack of training or supervision." *Wilson v. City of Chicago*, No. 17 C 2525, 2017 WL 4682738, at *2 (N.D. Ill. Oct. 18, 2017).

Although Plaintiff's Second Amended Count XIII is lengthier, it again presents the core issue that previously necessitated dismissal. Plaintiff fails plausibly to plead that the Village had a widespread practice or custom that caused Plaintiff's injuries, deliberately chose an inadequate training program, or maintained a practice of failing to supervise or control its officers.[2] To be sure, Plaintiff alleges that the Village did all these things, but the only specific facts to support those allegations arise from the Plaintiff's own personal experiences.

That is not sufficient. Although Plaintiff argues that putting the Village on notice of the alleged wrongdoing is sufficient to state a claim (Dkt. 61 at 4), the Court has already emphasized that relying on Plaintiff's own experiences is not enough.[3] (Dkt. 50 at 22). That is because "the gravamen" of a *Monell* claim is not misconduct by individual police officers (behavior covered elsewhere under Section 1983) but rather "a widespread practice that permeates a critical mass of an institutional body." *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015). As such, courts in this District "regularly dismiss *Monell* claims where the plaintiff has failed to allege instances of misconduct other than that from which he suffered." *Carmona v. City of Chicago*, No. 15-CV-462, 2018 WL 306664, at *2 (N.D. Ill. Jan. 5, 2018); *see also Petropoulos v. City*

---

[2] *See, e.g.*, *Garcia v. City of Chicago*, No. 17 C 3932, 2018 WL 3546742, at *3 (N.D. Ill. July 24, 2018) ("[Plaintiff] only conclusorily alleges that the City's failure to supervise and control police officers generally results in misconduct. Courts have found that such allegations do not suffice.")

[3] Plaintiff concedes in the briefing that "detailed discovery" is necessary to demonstrate the alleged widespread unconstitutional practices and failure to train (Dkt. 61 at 4), but Plaintiff "cannot unlock the doors to broad-based *Monell* discovery by merely pleading the elements of a *Monell* claim." *Vasquez v. Vill. of Posen*, No. 24 C 11209, 2025 WL 904334, at *3 (N.D. Ill. Mar. 25, 2025).

*of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) ("[Plaintiffs] do not satisfy these pleading standards. The complaint rests entirely on [Plaintiffs'] own personal experiences.") But that is what Plaintiff does here. Accordingly, Count XIII is dismissed with prejudice.

### B. The Motion to Dismiss Counts XV–XVI (IIED) Is Denied

In Counts XV and XVI, Plaintiff alleges that Defendants Garcia and Bejgrowicz committed the tort of intentional infliction of emotional distress ("IIED") through their extreme and outrageous conduct during the arrest and in facilitating Plaintiff's alleged malicious prosecution. (Dkt. 54 ¶¶ 154–71.) In its previous opinion, the Court recognized that there is a split in authority among the courts of this District as to whether Illinois recognizes the delayed accrual rule for IIED claims. Some cases hold here is no delayed accrual rule under Illinois law (so the cause of action for IIED would accrue on the date of the arrest),[4] while others explain that when an IIED claim is based on the same misconduct that procured the plaintiff's conviction, the statute of limitations does not begin to run until the wrongful conviction has been overturned.[5] (Dkt. 50 at 17 (citing cases).) The Court did not explicitly choose a side of the split, although by granting Plaintiff leave to replead, the Court implicitly recognized that additional facts could support a timely IIED claim.

Defendants admit that Plaintiff now "clearly alleges such a factual overlap" between his IIED claims and the misconduct that procured his conviction. (Dkt. 58 at 6.) Defendants suggest, however, that even if the Court were to agree that delayed accrual applies, Plaintiff's IIED claims would still be time-barred because IIED claims against a local government entity have only a one-year statute of limitations under 745 ILCS 10/8-101.[6] According to Defendants, if Plaintiff's claims accrued on September 24, 2021, the date that the First District Appellate Court reversed and remanded Plaintiff's case for retrial (Dkt. 54 ¶¶ 75–76), Plaintiff's initial complaint (filed on October 18, 2022 (*see* Dkt. ¶ 1)) would have been "roughly three weeks too late." (Dkt. 58 at 7.)

But September 24, 2021 cannot be the date on which Plaintiff's malicious prosecution claim accrued. Although the appellate court reversed his conviction, it also remanded the case for retrial: such a remand is not a favorable *termination* of the case. (Dkt. 54 ¶ 75.) *See Payano v. Grams*, 554 F. App'x 522, 524 (7th Cir. 2014)

---

[4] *See, e.g.*, *Batchelor v. City of Chicago*, 2020 WL 509034, at *4 (N.D. Ill. Jan. 31, 2020); *Friends-Smiley v. City of Chicago*, No. 16-CV-5646, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016) (citing cases).

[5] *See, e.g.*, *Treadwell v. Salgado*, 2021 WL 3129290, at *4 (N.D. Ill. July 23, 2021) (collecting cases); *Hill v. City of Chicago*, 2020 WL 509031, at *5 (N.D. Ill. Jan. 31, 2020).

[6] *E.g.*, *Brogsdale v. Torres-Corona*, No. 23 C 10105, 2024 WL 3052129, at *3 (N.D. Ill. June 19, 2024) (citing 745 ILCS 10/8-101).

4

(" '[T]he reversal of a conviction and remand for new trial is not' favorable termination under *Heck*.") (quoting *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996)); *see also Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *4 (N.D. Ill. Sept. 26, 2019) ("[P]laintiff's [malicious prosecution] claim was held not to have accrued until the charges against him were dropped without a retrial—not several years earlier, when his convictions were reversed.") (citing *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013)). Plaintiff is therefore correct that his criminal case did not terminate in his favor until May 18, 2023, when the Illinois Supreme Court both affirmed the reversal of his conviction and reversed the appellate court's ruling allowing a retrial. (Dkt. 54 ¶¶ 78–79; Dkt. 61 at 5.) If the IIED claim accrued on this date, it is timely.

It therefore must be decided whether the delayed accrual rule applies to IIED claims in this context. As the Court of Appeals explained in *Bridewell v. Eberle*, a claim of intentional infliction of emotional distress for conduct occurring "in the course of arrest and prosecution accrues on the date of the arrest," and Illinois "applies the standard rule that a claim accrues when the victim first suffers injury and knows its cause." 730 F.3d 672, 678 (7th Cir. 2013). But the Court of Appeals has also said that a wrongful conviction can be the source of the extreme emotional distress required for an IIED claim. *See Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010).

There is, again, a split in authority among district courts in this Circuit as to whether Illinois recognizes the delayed accrual rule for IIED claims that may be alleged to arise out of a wrongful conviction.[7] Defendants argue that *Bridewell* is unequivocal and that different claims (*e.g.*, malicious prosecution compared to IIED) can have different accrual rules even if they arise from similar conduct. (Dkt. 58 at 7.) *Bridewell*, however, is not dispositive here. *Bridewell* "did not discuss the accrual of an Illinois IIED claim in relation to the *Heck* rule," which "bars a plaintiff from bringing a claim that is inconsistent with his valid conviction until the conviction is set aside." *Smith v. Burge*, 222 F. Supp. 3d 669, 693 (N.D. Ill. 2016).

At this stage, Plaintiff's IIED claims may proceed. Where an IIED claim is "based on the same conduct that led to [a plaintiff's underlying criminal] conviction," the plaintiff is directly attacking "the validity of the convictions[.]" *Bouto v. Guevara*, No. 19-CV-02441, 2024 WL 4346561, at *12 (N.D. Ill. Sept. 30, 2024). And if those facts are pleaded before the plaintiff's conviction is favorably terminated, the complaint would be "in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994)". *Bouto*, 2024 WL 4346561, at *12. Accordingly, the Court agrees with others in this District that IIED allegations that attack the validity of the conviction are subject to *Heck's*

---

[7] (*See* notes 4–5 above.) At least one judge of the Seventh Circuit has described Illinois courts as "embrac[ing]" *Heck's* delayed accrual rule. *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring).

5

delayed accrual rule. *See Smith*, 222 F. Supp. 3d at 693. To be sure, it is unclear at this stage the extent to which the alleged conduct by Officer Garcia and Sergeant Bejgrowicz[8] implicated the validity of the convictions; at least as alleged, however, the same conduct that caused the emotional distress underlies the malicious prosecution claim. Accordingly, the IIED claims may proceed.

### C. The Claims Against Sergeant Michael Michienzi Are Dismissed with Prejudice

The parties agree that the claims against Sergeant Michienzi should not have been included in the Second Amended complaint because those claims relate to a separate cause of action not before this Court. (Dkt. 58 at 8–9; 61 at 6; 63 at 1.) Sergeant Michienzi is dismissed with prejudice. Plaintiff must therefore file a Third Amended compliant omitting the claims and allegations against Sergeant Michienzi.

## IV. Conclusion

For the reasons stated above, Defendants' partial motion to dismiss is granted in part and denied in part.

SO ORDERED in No. 22-cv-05703.

Date: September 3, 2025

JOHN F. KNESS
United States District Judge

---

[8] At least three different spellings of this Defendant's last name appear on the docket: "Berowicz" (per Plaintiff's submissions), "Bejgrowicz" (*e.g.*, Dkt. 32), and "Begrowicz" (*e.g.*, Dkt. 68). It is respectfully suggested that counsel jointly determine the correct spelling of Defendant's last name and include it in the forthcoming Third Amended Complaint.